UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Western Division)

| | |
|---|---|
| In re )<br>)<br>CADKEY CORPORATION, )<br>)<br>Debtor. )<br>) | Chapter 11<br>Case No. 03-44906-HJB |

**ORDER (i) APPROVING AND AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (ii) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (iii) GRANTING RELATED RELIEF**

This matter having come before the Court on Debtor's motion dated August 29, 2003, as modified by the Sale Procedure Order, as hereinafter defined (the "Sale Motion")[1]; objections to the Sale Motion (the "Bowers Objections") having been filed by Harold L. Bowers ("Bowers") and an objection to the Sale Motion (the "White Objection") having been filed by Robert White ("White"), and a limited objection to the Sale Motion having been filed by Kubotek Corporation (the "Kubotek Objection" and collectively, with the Bowers Objection and White Objection, the "Objections"); the Debtor having received a qualified counteroffer from Kubotek Corporation

---

[1] The full caption of the Debtor's Sale Motion (Docket No. 25) is:

> Debtor's Motion For An Order (A) Authorizing And Approving Bidding Procedures And Breakup Fee In Connection With Proposed Sale Of Substantially All Assets Of The Debtor Free And Clear Of Liens, Claims, Encumbrances And Interests And Proposed Assumption And Assignment Of Executory Contracts; (B) Scheduling A Hearing To Consider Approval Of The Sale Of Substantially All Assets Of The Debtor And Assumption And Assignment Of Executory Contracts; (C) Prescribing The Manner Of Notice For Such Hearing; (D) Authorizing And Approving Kubotek Asset Purchase Agreement With International Microcomputer Software, Inc. Or Another Bidder Providing Higher Or Otherwise Better Offer; (E) Authorizing The Sale Of The Debtor's Assets Free And Clear Of All Liens, Claims Encumbrances And Other Interests; (F) Authorizing The Assumption And Assignment Of Certain Executory Contracts; And (G) Granting Other Related Relief

Sale Order 2.doc

("Buyer"); adequate notice having been given and a hearing having been held on October 20, 2003 and continued on October 27, 2003, October 28, 2003, October 30, 2003, and November 6, 2003 (the "Hearing"); the Court having previously held a hearing on the Sale Motion and having considered offers of proof and arguments of counsel and having entered the Order Approving Bidding Procedures and Breakup Fee dated September 12, 2003 (the "Sale Procedure Order"); the Court having considered at the Hearing the testimony, documentary evidence, offers of proof (to the extent consented to by the parties), stipulations of the parties and the arguments of counsel; the Court having considered the record of this chapter 11 case; and good cause otherwise having been shown for the relief requested, and all Objections having been resolved, withdrawn or considered and overruled for the reasons set forth on the record at the hearing held on November 6, 2003 and set forth below in this Order and the findings and conclusions contained herein;

NOW, upon the Sale Motion, the exhibits annexed thereto, the evidence presented at the Hearing and the arguments of counsel advanced at the Hearing, and all prior pleadings and proceedings made herein,

THE COURT HEREBY FINDS:

A. This Court, pursuant to 28 U.S.C. section 1334, has jurisdiction over all assets of the Debtor and its chapter 11 estate. The Sale Motion is a core proceeding as defined in 28 U.S.C. section 157(b).

B. The Debtor and its advisers have diligently and in good faith marketed the Purchased Assets[2] to secure the highest and best offer or offers therefor. The Debtor and its advisors have provided a fair opportunity for all parties in interest to assess the value of the

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and Kubotek Asset Purchase Agreement.

Modified Purchased Assets (defined below) and sufficient time has been afforded and sufficient notice has been afforded to the marketing of the Modified Purchased Assets. The offer by Buyer, including the $2,850,000.00 in consideration provided for in the Kubotek Asset Purchase Agreement entered into with Buyer (the "Kubotek Asset Purchase Agreement"), and the transactions contemplated thereby, is the highest and best offer received for the Modified Purchased Assets (as hereinafter defined). More than two weeks have passed since the date of the initial sale hearing until the date of the entry of this order and, during such time, no additional or higher and better offer has been received for any portion of the Modified Purchased Assets.

C. The Debtor has demonstrated good, sufficient, and sound business purpose and justification, and compelling circumstances for the sale of the Modified Purchased Assets pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") prior to, and outside of, a plan of reorganization.

D. The Kubotek Asset Purchase Agreement must be approved promptly in order to preserve the value of the Modified Purchased Assets.

E. The sale price was not controlled by any agreement among potential bidders and, accordingly, there is no basis for recovery from Buyer under Section 363(n) of the Bankruptcy Code. Buyer is not an "insider" or "affiliate" of the Debtor (as such terms are defined in the Bankruptcy Code).

F. With respect to any and all persons or entities asserting any lien, claim (as that term is defined in section 101(5) of the Bankruptcy Code), encumbrance, or interest of any nature or extent (each, an "Encumbrance") on the Modified Purchased Assets (i) applicable non-bankruptcy law permits sale of such property free and clear of such Encumbrance; (ii) such person or entity has consented to the sale and transfer, license and assignment as applicable, free

and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license and assignment, as applicable; (iii) such Encumbrance is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such Encumbrance is in bona fide dispute; or (v) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such Encumbrance, so that the conditions of section 363(f) of the Bankruptcy Code have been satisfied.

      G.     Bowers has withdrawn the Bowers Objections and consented to the Sale of the Purchased Assets, including the sale of the Geometric Dimensioning and Tolerancing software interface in which Bowers asserted an interest pursuant to the Bowers Objections. Accordingly, the Debtor may sell the Modified Purchased Assets free and clear of any interests of Harold L. Bowers in intellectual property (including any claims that Modified Purchased Assets include trade secrets owned by Harold L. Bowers or that the Modified Purchased Assets include copyrights or material owned by Harold L. Bowers).

      H.     Bowers having consented to the sale of the Modified Purchased Assets and the use, manufacture, distribution, sale and licensing for use, manufacture, sale or distribution of the Modified Purchased Assets by Kubotek such actions do not violate the injunction set forth in the order dated July 12, 2001 entered in the litigation entitled <u>Bowers v. Baystate Technology, Inc.</u>, C.A. No. 91-40079-NMG pending before the United States District Court for the District of Massachusetts (the "Injunction").

      I.     As evidenced by the Certificate of Service dated September 15, 2003 [Docket No. 79], all counterparties to the Assigned Contracts have received adequate notice of, and an opportunity to object to, the Debtor's intent to assume and assign the Assigned Contracts to the Buyer, and the estimated cure amounts due under such contracts pursuant to section 365(b) of the

Bankruptcy Code, which are set forth on Exhibit A hereto (the "Cure Amounts"). None of the counterparties to the Assigned Contracts having objected to the assumption and assignment of the Assigned Contracts or the Cure Amounts, the Cure Amounts shall be set at the amount set forth on Exhibit A hereto.

J. All defaults (other than defaults of the type specified in section 365(b)(2) of the Bankruptcy Code) under the Assigned Contracts will be cured by Buyer at or prior to Closing, as a result of which all defaults necessary to be cured will have been cured, and adequate assurance of Buyer's future performance under said Assigned Contracts has been provided within the meaning of sections 365(b) and (f)(2)(B) of the Bankruptcy Code.

K. The assumption and assignment of the Assigned Contracts is in the best interest of the Debtor and its chapter 11 estate.

L. The assumption and assignment of the Assigned Contracts to Buyer is subject to all the provisions of the Kubotek Asset Purchase Agreement.

M. Under all the circumstances presented, (i) execution of the Kubotek Asset Purchase Agreement, and all other actions contemplated therein; (ii) consummation of all acts contemplated in this Order; (iii) the transfer of the Modified Purchased Assets by the Debtor to Buyer; (iv) the assumption and immediate assignment to Buyer of the Assigned Contracts; and (v) the receipt by the Debtor of the Purchase Price are in the best interests of the Debtor and its estate, creditors, and interest holders.

N. Proper, sufficient, and sound business reasons and other good cause for the entry of this Order have been shown.

O. The provisions of sections 363 and 365 of the Bankruptcy Code have been complied with, and are applicable to the transfer of the Modified Purchased Assets and the assumption and assignment of the Assigned Contracts by the Debtor to Buyer.

P. The Debtor has given due and proper notice of the proposed sale of the Modified Purchased Assets to all parties required to receive notice, as set forth in certificates of service filed with the Court, including without limitation, to Harold L. Bowers, Micro Control Systems, Inc. ("MCS"), Robert White, all holders of encumbrances of record with respect to the Modified Purchased Assets, all of the counterparties to Assigned Contracts, all municipalities, licensing agencies and governmental units (as such term is defined in 11 U.S.C. section 101(27)) scheduled as having a claim against the Debtor. Such notice complies with the terms of the Sale Procedure Order, satisfies the requirements of Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and is reasonably calculated to give actual notice of the Sale Motion and the relief requested therein. Parties that have objected to the Sale or appeared at the Hearing have received adequate notice of changes to the Kubotek Asset Purchase Agreement set forth in this Order. Such notice is adequate in the circumstances in light of the need for expedition in closing the Kubotek Asset Purchase Agreement to preserve value for the established creditors. The resolutions and considerations set forth in paragraphs 2 through 5 of this Order provide substantial enhanced value to the estate and creditors.

Q. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Modified Purchased Assets, has been afforded to all interested parties and entities.

R. As of the Closing under the Kubotek Asset Purchase Agreement, Buyer will have paid the cure amount for each of the Assigned Contracts as set forth on Exhibit A hereto and provided each of the counterparties to the Assigned Contracts with adequate assurance of future performance and therefore no uncured default shall exist under the Assigned Contracts, nor shall there exist any event or condition which, with the passage of time or the giving of notice, or both, would constitute such a default.

S. As set forth in the record of the Hearing, International Microcomputer Software, Inc. ("IMSI") has agreed to reduce its Breakup Fee payable upon closing of the sale from $75,000 to $45,000.

T. The Court finds that there is cause to waive and/or vacate the stays imposed by Bankruptcy Rules 6004(g) and 6006(d). However, there is cause to stay the effectiveness of this Order until 5:00 p.m. on November 12, 2003.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1. The Sale Motion is hereby granted in all respects. The Kubotek Asset Purchase Agreement, an executed copy of which was filed with the Court, with any amendments as specified herein and any modifications thereto set forth in the record of the Hearing is approved in all respects.

2. <u>Resolution of Objections of Harold L. Bowers.</u> Any and all objections to the Sale Motion filed by Harold L. Bowers shall be resolved as follows: (i) the Bowers Objections are withdrawn, (ii) at the closing of the Sale, Bowers shall deliver to Buyer an executed Release, attached hereto as <u>Exhibit B</u>, (iii) upon the closing of the Sale, Bowers shall be deemed to have released any and all administrative claims which Bowers could assert against the estate in respect of post-petition sales of CADKEY Products based on any alleged infringement of Bowers's

intellectual property rights and (except for the Payment defined below) any claim to proceeds of the Sale other than as an unsecured creditor of the estate, and (iv) at closing of the sale, Buyer shall pay to Bowers, c/o Banner & Witcoff Ltd., the amount of $750,000.00 (the "Payment") in exchange for the withdrawal of the Bowers' Objection, the execution of the Release, and the release of administrative claims against the estate as set forth in subsections (i) through (iii) above.

3. <u>Agreement in Respect of Micro Control Systems, Inc.'s Secured Claim.</u> Reference is made to the Stipulation By and Between Official Unsecured Creditors' Committee and MCS dated September 19, 2003 (the "Stipulation"). The Stipulation is hereby amended to eliminate the carve-out provided for therein. In lieu thereof and in consideration for (1) receipt of the release by Bowers in the form attached hereto as Exhibit B, and (2) payment of $1,860,000 at closing (of which $25,000 shall be placed in the reserve described in paragraph 4 below), MCS's secured claim as determined by compromise agreement with MCS shall be reduced to $1,860,000, which amount shall be paid to MCS by wire transfer at the closing of the sale. No other change to the Stipulation is made or implied. MCS agrees to take such reasonable action at the request of Buyer as is necessary or desirable to release of record any liens on the Modified Purchased Assets, including any filings with the United States Patent and Trademark office and the United States Copyright Office. All expenses for such actions shall be paid by Buyer.

4. The Kubotek Asset Purchase Agreement is hereby amended: (i) to modify the definition of Purchased Assets by deleting Section 1.2.4 of the Kubotek Asset Purchase Agreement, thereby eliminating the exclusion of "Excluded Copyrights and Products" from such definition (the "Modified Purchased Assets"), (ii) to extend the required date of entry of the order approving the Sale Motion to the date of entry of this order and to extend the required date

for closing of the sale pursuant to Section 9 of the Kubotek Asset Purchase Agreement to the eleventh day after the date of entry of this order, (iii) to provide that the requirement of a sale order pursuant to Section 5.7 of the Kubotek Asset Purchase Agreement shall be satisfied by this order, (iv) to amend Section 5.12 of the Kubotek Asset Purchase Agreement to strike the words "two business days prior to the Bidding Deadline" in the first sentence thereof and to substitute the words "the eleventh day after the date of entry of this order", and (v) to amend Section 2.1 of the Kubotek Asset Purchase Agreement to strike the words "third business day after the date of entry of the Sale Order (as defined below)" and to substitute the words "eleventh business day after the date of entry of the Sale Order (as defined below) or such other date as agreed between Buyer and Seller. Buyer shall be entitled to terminate the Kubotek Asset Purchase Agreement if an appeal of this order is filed and pending on the eleventh day after the date of entry of this order, other than an appeal filed by, on behalf of or at the behest of Robert White. The Debtor shall maintain $250,000 from the proceeds of the sale ($25,000 of which shall be contributed by MCS from its secured claim pursuant to paragraph 3 above) in a segregated account for use only in connection with defending any appeal of this Sale Order filed by, on behalf of or at the behest of Robert White ("White Appeal"). Such amount shall not be used for any other purpose until the expiration of eleven days following the latest to occur of (i) entry of this order with no White Appeal having been filed, (ii) the dismissal of the White Appeal or (iii) the affirming of this order by the highest court to which such an appeal has been timely taken. The Debtor and the Committee hereby agree, as for themselves and on behalf of any subsequently appointed trustee, that they shall use their best efforts to oppose any White Appeal. The cost of the appeal shall be borne equally by MCS and the estate, provided that MCS's contribution shall not exceed $25,000. MCS's contribution shall be paid solely from the funds MCS has contributed to the

$250,000 reserve described above. In the event that the cost of the appeal is less than $50,000, MCS shall be entitled to receive 50% of the difference between (a) $50,000 and (b) the actual cost of the appeal.

5. IMSI having agreed to reduce its Breakup Fee from $75,000 to $45,000, the Sale Procedure Order is hereby amended to reduce the Breakup Fee payable to IMSI to $45,000. Upon the closing of the sale, the Debtor is authorized to return the deposit made by IMSI, to repay to IMSI the Expense Financing Loan (as defined in the Sale Procedure Order) and to pay the Breakup Fee, as so reduced, to IMSI.

6. The Debtor is hereby authorized, empowered and directed, and, upon entry of this Order, has all the power and authority necessary to:

    a. Fully perform under, consummate, implement, execute and deliver the Kubotek Asset Purchase Agreement and all other documents contemplated thereby, to consummate the transactions contemplated by the Kubotek Asset Purchase Agreement and to take all other actions required to be taken pursuant to the Kubotek Asset Purchase Agreement.

    b. Transfer the Modified Purchased Assets to Buyer or Buyer's designee and to execute and deliver all the documents necessitated thereby, and to take any action necessary to effectuate the transfer of the Modified Purchased Assets to Buyer or Buyer's designee.

    c. Assume and assign to Buyer or Buyer's designee the Assigned Contracts effective upon the Closing and upon the terms and conditions set forth in the Kubotek Asset Purchase Agreement;

    d. Receive the consideration described in the Kubotek Asset Purchase Agreement from Buyer and take any action necessary to effectuate the receipt of such consideration;

    e. Fully perform and take all action necessary to effectuate the Kubotek Asset Purchase Agreement, the transactions contemplated thereby, and the obligations contemplated by this Order.

7. No other or further consents or approvals of this Court are required for the Debtor to consummate or effectuate (i) the Kubotek Asset Purchase Agreement, (ii) the transfer of the

Modified Purchased Assets, (iii) the assumption and assignment to Buyer or Buyer's designee of the Assigned Contracts, and (iv) the receipt of consideration from Buyer.

8.  Pursuant to section 363(f) of the Bankruptcy Code, the Modified Purchased Assets shall be transferred to Buyer or Buyer's designee, and, upon the Closing under the Kubotek Asset Purchase Agreement, the Modified Purchased Assets shall be free and clear of any and all Encumbrances, including, without limitation, all claims, if any, arising from the operation or cessation of the Debtor's business, whether arising prior to or subsequent to the commencement of the Debtor's case under chapter 11 of the Bankruptcy Code (or any case under chapter 7 of the Bankruptcy Code that may result from the conversion of such chapter 11 case), and whether imposed by agreement, understanding, law, equity or otherwise (except as otherwise provided in the Kubotek Asset Purchase Agreement or this Order), which Encumbrances, if any, shall attach to the proceeds of the sale. Without limiting the foregoing, the sale of the Modified Purchased Assets to Buyer or Buyer's designee shall be free and clear of any interests of Harold L. Bowers in intellectual property (including any claims that the Modified Purchased Assets include trade secrets owned by Harold L. Bowers or that the Modified Purchased Assets include copyrights or material owned by Harold L. Bowers).

9.  Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding, against Buyer or its successors and assigns with respect to any Encumbrance. Without limiting the generality of the foregoing, Buyer shall have no liability for any claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor or its directors, officers or shareholders.

10.  If any person or entity that has filed a financing statement or other documents or agreements evidencing an Encumbrance on the Modified Purchased Assets shall not have delivered, in proper form for filing, termination statements, instruments of satisfaction, releases and other documents to the Debtor prior to the Closing, then the Debtor shall be and hereby is authorized to execute such termination statements, instruments of satisfaction, releases and other documents on behalf of the person or entity and to file the same with any appropriate registry or public filing office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Modified Purchased Assets free and clear of Encumbrances shall be self-executing, and notwithstanding the failure of Buyer, the Debtor, or any other party to execute, file or obtain releases, termination statements, assignment consents or other instruments to effectuate, consummate and/or implement the provisions hereof or the Kubotek Asset Purchase Agreement with respect to the sale of the Modified Purchased Assets and the assumption and assignment of the Assigned Contracts, all Encumbrances on the Modified Purchased Assets and the Assigned Contracts shall be and hereby are deemed to be divested, terminated and discharged, with such Encumbrances to attach to the proceeds of the sale.

11.  The Debtor is hereby authorized in accordance with section 365 of the Bankruptcy Code to (i) sell, assume, assign, and transfer to Buyer or its designee the Assigned Contracts pursuant to the provisions of sections 363 and 365 of the Bankruptcy Code, free and clear of any and all Encumbrances, and (ii) execute and deliver to Buyer such assignment documents as may be necessary or desirable to sell, assign and transfer the Assigned Contracts.

12.  On or before the Closing and as provided in the Kubotek Asset Purchase Agreement, Buyer shall pay the amounts due, if any, on the Assigned Contracts necessary to cure any existing default under the appropriate Assigned Contract. Other than payment of such

amounts, if any, no other action needs to be taken with respect to any of the Assigned Contracts in order for the Debtor to assume the Assigned Contracts under sections 365(b) and 365(f)(2) of the Bankruptcy Code.

13. The Assigned Contracts shall, upon assumption and assignment to Buyer, be deemed to be valid and binding and in full force and effect and enforceable by Buyer in accordance with their respective terms. Pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved, from the date of its assignment, from any further liability with respect to the Assigned Contracts. Buyer shall not, as a result of such assignment, assume any liability under the Assigned Contracts for events occurring prior thereto.

14. The assumption and assignment of the Assigned Contracts is conditioned upon the Debtor closing under the Kubotek Asset Purchase Agreement, and the transfer of the Modified Purchased Assets is conditioned upon the assumption and assignment of the Assigned Contracts pursuant to this Order.

15. The Debtor is hereby authorized, empowered and directed, and, upon entry of the Order, shall have all the authority necessary, to perform such ministerial acts as may be required to effectuate and implement the Kubotek Asset Purchase Agreement and any transaction contemplated thereby.

16. All of the transactions and actions contemplated by this Order are properly authorized under sections 363 and 365 of the Bankruptcy Code.

17. The consideration provided by Buyer for the Modified Purchased Assets (and the Assigned Contracts) under the Kubotek Asset Purchase Agreement is fair and reasonable, and the result of open and competitive bidding, and may not be avoided under section 363(n) of the Bankruptcy Code.

18. This Court retains jurisdiction to enforce and implement the terms and provisions of the Kubotek Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and any agreements executed in connection therewith in all respects, including but not limited to, retaining jurisdiction (a) to compel delivery of the Modified Purchased Assets (and the Assigned Contracts) to Buyer; (b) to resolve any disputes arising under or related to the Kubotek Asset Purchase Agreement, except as otherwise provided therein; and (c) to interpret, implement, and enforce the provisions of this Order and the Sale Procedure Order.

19. The terms and provisions of the Kubotek Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of the Debtor and its successors and assigns, and any affected third parties, notwithstanding conversion or dismissal of the Debtor's bankruptcy case or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

20. The failure specifically to include or refer to any particular provisions of the Kubotek Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Kubotek Asset Purchase Agreement be authorized and approved in its entirety.

21. The Kubotek Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by the Debtor and Buyer, and in accordance with the terms of the Kubotek Asset Purchase Agreement, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the estate of the Debtor.

22. The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to the implement the terms and conditions of the Kubotek Asset Purchase Agreement and the provisions of this Order. The Debtor irrevocably waives any right to seek any modification of this Order without the prior written consent of Buyer, and no such consent shall be implied by any other action, inaction or acquiescence by Buyer.

23. The provisions of Bankruptcy Rules 6004(g) and 6006(d) staying the effectiveness of this Order for ten days are hereby waived. The effectiveness of this Order, however, is stayed until 5:00 p.m. on November 12, 2003. Thereafter, this Order shall be effective, and the parties may consummate the transactions contemplated by the Kubotek Asset Purchase Agreement immediately upon entry.

24. Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order confirming any plan of reorganization or liquidation shall conflict with or derogate from the provisions of this Order. Further, the provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of any order, which may be entered confirming any plan of reorganization or liquidation of the Debtor or converting of the Debtor's case from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

Dated: November 6, 2003

_____
Honorable Henry J. Boroff
United States Bankruptcy Judge

# Exhibit A

## Assigned Contracts

| Contract | Contract Type | Non-Debtor Party | Cure Amount |
|---|---|---|---|
| Tech Soft America Software Distribution License Agreement made as of February 16, 1999 between Tech Soft America, a California limited liability corporation, and Baystate Technologies, Inc., a Massachusetts corporation. | Software License | Tech Soft America<br>Attn: Ivan Lee<br>1830 Embarcadero, Ste 103<br>Oakland, CA 94606<br>Ph (510) 434-7630<br>Fax (510) 434-7631 | $1,895.94 |
| OEM Software License Agreement, as amended, by and between Spatial Technology Inc. and Baystate Technologies, Inc. dated June 28, 1996. | Software License | Spatial Corp.<br>Attn: John F. Benger<br>10955 Westmoor Dr., Ste 425<br>Westminster, CO 80021<br>Ph (303) 544-2900<br>Fax (303) 544-3003 | $10,899.54 |
| Software License and Sublicensing Agreement between GLOBEtrotter Software, Inc. and Baystate Technologies, Inc. dated June, 1999, renewed annually, most recently on August 21, 2003. | Software License | Macrovision Corporation<br>Attn: Nalini Ram<br>2830 De La Cruz Blvd.<br>Santa Clara, CA 95030<br>Ph (408) 743-8600<br>Fax (408) 743-8610 | $0.00 |
| Software License Agreement Number 00-1002R made effective on the 31st day of October 2000 by and between Honeywell International Inc., a Delaware corporation, and CADKEY Corporation, a Massachusetts corporation. | Software License | Honeywell International Inc.<br>Attn: Caron O'Dower<br>2000 East 95th Street<br>P.O. Box 419159<br>Kansas City, MO 64141-6159<br>Ph (816) 997-2000<br>Fax (816) 997-3331 | $0.00 |

Sale Order 2.doc

EXHIBIT "B"

## RELEASE

FOR VALUE RECEIVED, HAROLD L. BOWERS, an individual residing at 215 N. Auburndale Street, Memphis, Tennessee 38112 ("Bowers"), HLB TECHNOLOGY, INC., a corporation organized under the laws of the Commonwealth of Virginia ("HLB") and GEORGE W. FORD, III, an individual residing at 86 Federal City Road, Lawrenceville, New Jersey 08648 ("Ford", and collectively, Bowers, HLB and Ford are the "Releasors"), do hereby release, remise and forever discharge (i) KUBOTEK CORPORATION, a corporation with its principal executive offices at 4-3-36 Nakanoshima Kita-ku, Osaka, Japan 530-0005, and any designee that purchases the Modified Purchased Assets (the "Buyer"), as such term is defined in the Sale Order dated November ___, 2003 between Buyer and CADKEY (the "Sale Order"); (ii) Buyer's officers, directors, agents, attorneys, employees, corporate affiliates, advisors, consultants, and shareholders; (iii) any sales agents, distributors or retailers of CADKEY Corporation ("CADKEY"); (iv) except as provided herein, any and all current and former officers, directors or employees of CADKEY who are employed or retained by Buyer after the closing of the Asset Purchase Agreement between the Buyer and CADKEY dated October 16, 2003 (the "Asset Purchase Agreement"); and (v) MICRO CONTROL SYSTEMS, INC., a secured creditor of CADKEY, and MCS's officers, directors, attorneys, agents, corporate affiliates, advisors, consultants and shareholders (collectively, the "Releasees"), of and from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, claims, rights, damages, losses or liabilities of any nature whatsoever, both at law or in equity, whether known or unknown, which arose at any time prior to the date hereof, or which hereafter could arise based on any act, fact, transaction, cause, matter or thing which occurred prior to the date hereof (collectively, the "Causes of Action"), including, without limitation, (a) any and all Causes of Action which were or could have been asserted in the lawsuit entitled Harold L. Bowers d/b/a HLB Technologies, Inc., C.A. No. 91CV40079-NMG pending in the United States District Court for the District of Massachusetts; and (b) any and all Causes of Action which now exist or hereafter could arise in connection with the Purchased Assets, as such Purchased Assets may be modified to include the Geometric Dimensioning and Tolerancing portion of CADKEY's software products. To the extent, if any, that Releasors could assert that any of the Modified Purchased Assets or manufacture, use, license and relicense or sale of any of the Modified Purchased Assets infringes on rights of Releasors, Releasors hereby grant a fully prepaid, royalty free, worldwide, non-exclusive license to Releasees to permit such manufacture, use, license and relicense or sale. Releasors further consent to the sale pursuant to the Asset Purchase Agreement and waive any right to appeal Bankruptcy Court approval of such sale. Notwithstanding anything contained herein to the contrary, the Releasors do not hereby release Robert L. Bean or Karen Bean (the "Principals"). The Releasors retain all rights of any sort against the Principals, and the Releasees are not allowed any rights to grant licenses to the Principals.

Bowers Release 460462v7

IN WITNESS WHEREOF, the Releasors have caused this Agreement to be executed in one or more counterparts as of the day and year written below.

Dated: _____, 2003          HLB TECHNOLOGY, INC.

                                 By:_____
                                     Harold L. Bowers, President


Dated: _____, 2003          _____
                                 Harold L. Bowers


Dated: _____, 2003          _____
                                 George W. Ford, III