UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

03-40279-NMG

WHITE

Appellant

v.

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS
OF CADKEY CORPORATION

Appellee

ON APPEAL FROM AN ORDER OF
THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

**BRIEF OF APPELLEE**

| | |
|---|---|
| Michael J. Goldberg<br>    BBO No. 551869<br>John C. La Liberte<br>    BBO No. 556046<br>Anthony L. DeProspo, Jr.<br>    BBO No. 644668 | *Attorneys for*<br>*Appellee* |
| SHERIN AND LODGEN LLP<br>100 Summer Street<br>Boston, MA 02110<br>(617) 646-2000 | March 31, 2004 |

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Jurisdiction ................................................................................................................................ 1

Issue Presented ......................................................................................................................... 1

Standard of Review .................................................................................................................. 1

Statement of the Case ............................................................................................................... 1

Statement of Facts .................................................................................................................... 2

      Debtor's Bankruptcy ..................................................................................................... 3

      Bower's Objection to the Sale to IMSI ........................................................................ 4

      The White Objection .................................................................................................... 5

      The Auction .................................................................................................................. 5

      Testimony on Marketing Efforts .................................................................................. 6

      Good Faith Testimony ................................................................................................. 6

      Kubotek's Inability to Obtain a "Good Faith" Finding Under Section 363(m) ................ 7

      White Refuses to Withdraw His Objection .................................................................. 8

      The Court's Ruling ...................................................................................................... 8

Argument .................................................................................................................................. 9

      The Bankruptcy Court Did Not Abuse Its Discretion In Approving the Sale ................ 9

      A.  Debtor Exercised Sound Business Judgment In Consummating the Sale .......... 9

      B.  The Court Found No Evidence That The Bowers Litigation
           Impacted the Sale Price ........................................................................................ 12

      C.  The Remainder of White's Objections are Raised for the First Time on Appeal and
           Should Therefore be Rejected .............................................................................. 13

Conclusion .............................................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

In re Aerovox, Inc.,
269 B.R. 74 (Bankr. D. Mass. 2001) .......... 9

In re Charlesbank Laundry Co.,
37 B.R. 20 (Bankr. D. Mass. 1983) .......... 10

In re Crystalin, LLC,
293 B.R. 455 (8th Cir. B.A.P. 2003) .......... 11

In re Lionel Corp.,
722 F.2d 1063 (2d Cir. 1983) .......... 9

In re Logical Software,
66 B.R. 683 (Bankr. D. Mass. 1986) .......... 9

In re Montgomery Ward Holding Corp.,
242 B.R. 147 (D. Del. 1999) .......... 1

In re Orion Pictures Corp.,
4 F.3d 1095 (2d Cir. 1993) .......... 10, 11

In re Rauh,
119 F.3d 46 (1st Cir. 1997) .......... 13

In re Weinstein,
217 B.R. 5 (D. Mass. 1998) .......... 1, 13

Singleton v. Wulff, 428 U.S. 106 (1976) .......... 13

## Statutes

11 U.S.C. § 363(b) .......... 1, 9, 10

11 U.S.C. § 363(m) .......... 7

28 U.S.C. § 157(d) .......... 5

## Jurisdiction

Pursuant to Fed. R. Bankr. P. 8010(a)(2), and for the limited purpose of this appeal, Appellee adopts Appellant's statement of the basis for jurisdiction.

## Issue Presented

Appellant contends that the Bankruptcy Court abused its discretion by failing to postpone the sale of Debtor's assets in light of Harold L. Bowers's ("Bowers") objection to the sale. The remaining issues raised by Appellant in his "Issues on Appeal" were not previously raised in his objection to Debtor's motion for approval of the sale, and should not therefore be considered by this Court. See In re Weinstein, 217 B.R. 5, 8 (D. Mass. 1998).

## Standard of Review

The "abuse of discretion" standard of review controls appeals from orders involving motions to sell pursuant to 11 U.S.C. § 363(b). See In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999).

## Statement of the Case

CADKEY Corporation (the "Debtor") commenced a Chapter 11 case by filing a voluntary petition for relief on August 22, 2003 (the "Petition Date"). On August 29, 2003, Debtor moved the United States Bankruptcy Court for the District of Massachusetts (Western Division) for an order approving the sale of substantially all of Debtor's assets (the "Sale Motion"). On or about October 9, 2003, Robert White ("White" or "Appellant"), an unsecured creditor, filed an objection to the sale (the "White Objection") on the basis that unsettled litigation against Debtor's estate (the "Bowers Litigation") would adversely effect the sale price, and that more time was needed after the Bankruptcy Court's determination of the issues in the

Bowers Litigation for potential purchasers to assess the impact that Bowers's claim would have on the sale process.

The Court heard argument and testimony on the Sale Motion at hearings held on October 20, 2003, October 27, 2003, October 28, 2003, October 30, 2003 and November 6, 2003 (collectively, the "Hearing"). In the meantime, Bowers settled the Bowers Litigation with respect to Debtor's estate. On November 6, 2003, the Court (Boroff, J.) entered an order overruling the White Objection and approving the sale of Debtor's assets for approximately $3.6M to Kubotek Corporation (the "Sale Order"). The Court found no evidence that the Bowers Litigation negatively impacted either the sale process or the ultimate sale price. The Court also found no evidence that the outcome would have been different had there been an extension of the sale date.

White subsequently filed this appeal (the "Appeal"). White claims that the Court abused its discretion by going forward with the sale despite the existence of the Bowers Litigation. White now also claims that Debtor did not conduct the sale in an orderly fashion and that the buyer was an "insider" of Debtor. None of White's allegations withstand scrutiny. As a result, the Court should affirm the Sale Order.

## Statement of Facts

Debtor is a software company based in Marlborough, Massachusetts and engaged in the development, manufacture, and distribution of PC-based, mechanical engineering computer-aided design (CAD) software systems used by designers and manufacturers worldwide. See Trustee's Appendix ("TA") at 123-124.[1] As of the Petition Date, Debtor had 26 employees and

---

[1] Appellant failed to assemble a complete record appendix; indeed, Appellant failed to include *any* of Appellee's designations. Appellant's appendix is hereinafter referred to as "AA." For the convenience of the Court, Appellee has assembled its own record appendix which it respectfully submits herewith.

more than 6000 customers worldwide serviced through a sales network of over 50 distributors. TA 124.

On June 7, 2000, Debtor was found liable for patent and copyright infringement and breach of contract on claims brought by Bowers (the "Bowers Litigation," as defined above). TA 195. Bowers subsequently obtained an injunction prohibiting Debtor from infringing upon Bowers's intellectual property (the "Injunction"). TA 196.

### Debtor's Bankruptcy

On August 8, 2003, Bowers sought a writ of execution to satisfy the litigation judgment debt of approximately $5.9M. TA 124. On August 22, 2003, Debtor filed its voluntary petition for relief under Title 11 of the United States Code (the "Petition Date," as defined above). Id. That same day, Debtor signed an asset purchase agreement with International Microcomputer Software, Inc. ("IMSI"), a well capitalized strategic purchaser. TA 124-125. The parties set the purchase price at $2.5M (in excess of Debtor's secured debt), subject to Bankruptcy Court approval. TA 124.

After entering bankruptcy, Debtor's customers began withholding orders, sales fell off drastically and receivables escalated. TA 461-462. While Debtor normally experienced a seasonal increase in sales revenue in the fall, Debtor's sales numbers actually decreased each month starting in June 2003. TA 487. Indeed, Debtor's introduction of a software upgrade in mid-September 2003 should have resulted in a sales spike. TA 463 It did not. Id. Sales of Debtor's upgrade, which normally account for about two-thirds of Debtor's overall revenues, declined substantially after the Petition Date. Id.

### Bowers's Objection to the Sale to IMSI

Bowers subsequently advised Debtor of his intent to object to the proposed sale to IMSI. TA 198. Bowers claimed that certain of Debtor's products infringed on Bowers's intellectual property rights in violation of the Injunction. TA 198-199. Bowers insinuated that if IMSI purchased Debtor's assets without a release, Bowers would seek legal redress against IMSI. TA 199. On August 29, 2003, Debtor filed a motion seeking Bankruptcy Court approval of the sale to IMSI, subject to higher and better offers (the "Sale Motion," as defined above). Id. The Sale Motion also sought approval of the procedures to be utilized by Debtor in soliciting higher and better offers (the "Auction Procedures"). TA 150. On September 8, 2003, the day before the scheduled Bankruptcy Court hearing on the Auction Procedures, IMSI terminated the IMSI Purchase Agreement. TA 125.

In response to IMSI, and in light of Bowers's anticipated objections to the sale, Debtor amended the Sale Motion. TA 126. The amended Sale Motion continued to seek a Court order that Debtor's assets would be sold free and clear of all liens, claims and encumbrances (with a few exceptions). Id. The amended Sale Motion also sought a Court order which would allow Debtor to sell its assets free and clear of any alleged interests Bowers had in Debtor's intellectual property. Id. In sum, Debtor sought a ruling from the Bankruptcy Court that Debtor's sale would not violate the Injunction. Id.

At a hearing on the proposed Auction Procedures held on September 12, 2003, Bowers objected to the Bankruptcy Court's authority to conduct the asset sale. TA 127. The Court nonetheless entered an order approving the Auction Procedures, and scheduled a hearing to consider the proposed Sale Order on October 27, 2003. TA 356. On September 26, 2003, Bowers filed his objection to the proposed sale (the "Bowers Objection"). TA 201. On the same

day, Bowers filed an emergency motion with the United States District Court for the District of Massachusetts seeking to withdraw the reference from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). Id. On October 6, 2003, Debtor filed its Objection to the Motion to Withdraw Reference. Id.

### The White Objection

On October 9, 2003, Robert White filed the White Objection. TA 001-004. White is an unsecured creditor of Debtor; indeed, at the time he filed his Objection, White served on the Official Committee of Unsecured Creditors (the "Committee"). TA 430-431.[2] White had previously attempted to raise money to place a bid on Debtor's assets but was unable to obtain financing. TA 431. In his Objection, White claimed that the Bowers Litigation cast a shadow over Debtor's ability to properly market the sale and that more time was needed to resolve the Bowers Litigation before proceeding with the sale. TA 003, 483.

### The Auction

On October 20, 2003, the District Court withdrew the reference of the Bankruptcy Case for a period of 72 hours. TA 356. Shortly thereafter, Bowers, Debtor and the Committee reached an agreement regarding certain procedures to take place at the hearing in Bankruptcy Court on October 27, 2003. Id. Based on that agreement, Debtor's case was returned to the Bankruptcy Court by order dated October 23, 2003. AA 103.

Bowers did not agree to waive his Objection. TA 357. However, the agreement between Bowers and Debtor provided that qualified bidders could condition their bid(s) on an order of the Bankruptcy Court that the purchase and sale of Debtor's assets would not violate the Injunction.

---

[2] Stating that he intended to bid on Debtor's assets, White had recused himself from the Committee's deliberations on the sale prior to filing the White Objection. White subsequently resigned from the Committee, after the Bankruptcy Court expressed concerns over whether White's attempt to negotiate a settlement of the White Objection for financial consideration was consistent with his fiduciary duties as a Committee member. TA 441-442.

Id. Alternatively, the winning bidder would be given the opportunity to negotiate with Bowers and obtain a waiver of the Bowers Objection and/or a release of all claims. TA 357-358. The White Objection remained pending. TA 454.

As agreed, the auction commenced on October 27, 2003. TA 367-368. IMSI's $2.5M offer in the IMSI Purchase Agreement stood as the first bid. TA 366. Kubotek Corporation ("Kubotek"), a Japanese firm, bid $2.85M and won the auction. TA 371 Kubotek advised the Court that it did not intend to negotiate with Bowers, but rather, conditioned its bid on a finding that the purchase did not violate the Injunction. Id.

### Testimony on Marketing Efforts

The Schwartz Heslin Group ("Schwartz") acted as Debtor's investment banker to attract potential bidders. TA 398. Its principal, Robert Schwartz, testified that Schwartz identified through proprietary databases and databases acquired from major companies a list of approximately 600 strategic buyers. Id. After conducting further research, Schwartz narrowed the list down to 48 potential prospects. Id. Of the 48, six were not interested; 42 received a summary of the opportunity and a copy of the sales notice. TA 398-399. Fourteen prospects responded. TA 399. Seven indicated a high level of interest and performed due diligence. Id. Schwartz ultimately obtained 2 bidders—IMSI and Kubotek. Id.

### Good Faith Testimony

Debtor's CEO, Robert Bean, testified that Debtor's sales were declining, customers were withholding payments, and receivables were skyrocketing. TA 461-462. Mr. Bean also testified that sales of Debtor's annual upgrade were very disappointing and that several customers had taken their business to competitors. TA 463. Mr. Bean added:

> I believe the, if the sale isn't completed soon, we're going to see
> continued deterioration of sales as far as customers ordering from

>     dealers, continued stretching out of dealer payments and dealers
>     not paying promptly, and a decline of the, continued decline of our
>     annual update contract base which is down significantly from pre-
>     petition levels already. And so I think the company will probably
>     have to look at liquidating if we don't come to a sale.

TA 473. Mr. Bean further testified that he had met with Kubotek representatives concerning Debtor's current financial position. TA 464-465.

IMSI's CEO, Martin Wade, testified that IMSI decided against raising its initial bid of $2.5M because of Debtor's declining sales, customer cancellations and the disappointing results from the release of Debtor's software upgrade:

>     Declining sales, sales declining faster than we had anticipated,
>     cancellations of customers that were more than we anticipated but
>     not up to the threshold that was in our purchase and sale
>     agreement. ... And just an overall concern that during a month
>     when we release an upgrade, that sales should have been much
>     more robust and they were not.

TA 380. Mr. Wade also testified that IMSI had no discussions with Kubotek prior to the auction and that no "side" agreements with Debtor or Kubotek had been entered into. TA 381.

### Kubotek's Inability to Obtain a "Good Faith" Finding Under Section 363(m)

At the October 27, 2003 hearing, Naotaki Kakishita testified on behalf of Kubotek. TA 385. Mr. Kakishita denied discussing with Mr. Bean the details of Kubotek's interest in Debtor's assets. TA 387. Under the circumstances, Judge Boroff concluded that Kubotek could not secure a good faith finding under 11 U.S.C. § 363(m). TA 400. Kubotek advised the Court that it required a good faith finding to close the deal. TA 404. By default, therefore, IMSI became the high bidder again but declined to go forward. TA 404, 419. Kubotek subsequently decided that, given the change in circumstances, it would consider dispensing with the good-faith finding requirement and attempt to negotiate with Bowers. TA 422. The Court agreed to continue the hearing for 24 hours. TA 425.

On October 28, 2003, the parties reported the following: Debtor had resolved the Bowers Objection and Kubotek agreed to provide $3.6M in total compensation for Debtor's assets, $750,000 of which would be paid to Bowers in consideration for a release of potential infringement claims against Debtor's estate. TA 429. Kubotek also agreed to close the sale notwithstanding White's refusal to withdraw his Objection. TA 446.

<u>White Refuses to Withdraw his Objection</u>

Having resolved the major obstacles to consummating the sale, the parties addressed the White Objection at a hearing held on November 6, 2003. TA 483, et seq. The crux of White's objection is that the sale happened too quickly and that Debtor's assets had not been marketed sufficiently. <u>Id.</u> White also claimed that Debtor was poised for an "avalanche of new sales" and that those new sales had been artificially stunted. TA 481. The Court heard additional testimony from Mr. Bean, and took closing arguments from counsel for Debtor, White and the Committee. TA 460-482, 483-490.

<u>The Court's Ruling</u>

The Court overruled the White Objection for four reasons. First, the Court found that White's claim that an insufficient amount of time had been spent marketing the company was belied by Schwartz's testimony regarding the "extensive marketing efforts" Debtor engaged in. TA 490. Second, the Court found no evidence that Bowers would have withdrawn his objection any sooner if the length of time Debtor's assets had been marketed were "doubled" as White suggested. TA 490-491. Third, the Court found absolutely no evidence that would "tend to show that a single potential bidder was chilled in its interest in the company on account of the Bowers litigation." TA 491. Last, the Court recognized that although White claimed that Debtor's marketing efforts were insufficient, "there [was] absolutely no evidence from Mr.

White what those marketing efforts ought to have been." Id. Accordingly, the Court held that the White Objection suffered "from a complete failure of evidence and proof," and overruled the Objection. Id.

## Argument

### The Bankruptcy Court Did Not Abuse Its Discretion In Approving The Sale

The Bankruptcy Court acted well within its discretion in approving the sale to Kubotek. A debtor's business decision to sell assets pursuant to section 363(b) "should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." In re Logical Software, 66 B.R. 683, 686 (Bankr. D. Mass. 1986) (internal quotations omitted).[3] Here, there is overwhelming evidence that Debtor exercised sound business judgment and that there existed sufficient justification to consummate the sale. Moreover, the Court found that the Bowers Litigation had absolutely no impact on the bidding process or the final sale amount. There was no abuse of discretion. Accordingly, Judge Boroff's Sale Order should be affirmed.

    A.    **Debtor Exercised Sound Business Judgment In Consummating The Sale.**

"Section 363(b) of the Bankruptcy Code provides that a trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate ... when a sound business purpose justifies such action." In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (internal quotations omitted); see also 11 U.S.C. § 363(b). In

---

[3] In his brief, Appellant lists five factors which must be present to support a finding of "sound business judgment" with regard to a sale under section 363(b). See Appellant's Brief ("App. Brief") at 8; see also In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). Appellant has misconstrued the Lionel case. In Lionel, the Court held that there must be a "good business reason" to grant an application under § 363(b). Lionel, 722 F.2d at 1071. The Court listed several factors that a bankruptcy judge *may* consider in making his or her decision, but stated that the "list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge." Id. In this case, the Court found that there existed a good business reason for Debtor's sale to Kubotek, a finding well supported by the record of the proceedings in the Bankruptcy Court as discussed in greater detail infra.

-9-

determining whether to approve the business decision of a debtor, the "bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee ... and not, as it does in other circumstances, as an arbiter of disputes between creditors and the estate." In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d Cir. 1993). A sale of assets pursuant to Section 363 is appropriate if the "bid is fair and reasonable and the sale is in the best interests of the estate and creditors." In re Charlesbank Laundry Co., 37 B.R. 20, 22 (Bankr. D. Mass. 1983).

Debtor's sale to Kubotek more than satisfies this standard. Over the course of 2003, Debtor began to face serious and adverse financial realities. TA 473. Debtor's CEO, Robert Bean, testified that customers were withholding orders, sales had fallen off and that receivables had escalated. TA 461-462. While Debtor normally experienced a seasonal increase in sales revenue in the fall, the evidence showed that Debtor's sales numbers <u>decreased</u> each month starting in June 2003. TA 487. Mr. Bean testified that sales of Debtor's software upgrade, which normally account for about two-thirds of Debtor's overall revenues, had declined substantially since the Petition Date. TA 463.

In his brief, White articulates a four-factor test to determine the soundness of a Debtor's business judgment in connection with a sale under section 363(b). See App. Brief at 8-9. While this test has not been adopted in this circuit, consideration of such factors only strengthens Debtor's position. For example, Debtor's principal squarely addressed the need for consummating the sale expeditiously or be otherwise faced with liquidation. TA 473. The Court also found that the sale was proposed in good faith and that Debtor provided adequate notice to interested parties. TA 056-057. Last, the Court found that the ultimate purchase price was reasonable. AA 2-3.

It is of no consequence whether White's second-guessing would have produced a better outcome. Rather, the test for this Court to apply is simply whether the sale "benefited" the estate. See Orion Pictures, 4 F.3d at 1099; see also In re Crystalin, LLC, 293 B.R. 455, 464 (8th Cir. B.A.P. 2003) ("Where the trustee's request is not manifestly unreasonable or made in bad faith, the court should normally grant approval as long as the proposed action appears to enhance the debtor's estate.") (internal quotations omitted). White's claims that the sale was premature because Debtor's revenues were allegedly increasing is equally unavailing, because it is entirely unsupported by the facts of the case. Indeed, the Court asked White's counsel:

> I think at some point you need to answer the question I've just asked, which is why does it matter what [Debtor] is theoretically worth or what it might be worth someday if it had enough money, if it went out to a reasonable population of people and nobody bid, including Mr. White who apparently tried to get investors but couldn't.

TA 482. White's counsel did not respond. Id.

The Court acted within its discretion in recognizing that Debtor's long-term financial outlook was grim. Debtor required a significant capital investment (in the $500,000 - $1M range) to continue marketing efforts and to upgrade its in-house computer software. TA 487. Kubotek is able to provide this needed working capital. Id. Since the Petition Date, Debtor lost over 10% of its work force – even with a sale on the horizon. Id. Putting off the sale would have enhanced the risk of further employee attrition, and without its key employees, Debtor's value would have decreased exponentially. Id. Kubotek stepped in at the precise right moment to stop the hemorrhaging. Debtor and its advisors diligently and in good faith marketed the sale assets to secure the best possible offer therefor. TA 455, 491; AA 2. Debtor exercised sound business judgment in selling its assets to Kubotek, and the Sale Order should stand.

### B. The Court Found No Evidence That The Bowers Litigation Impacted The Sale Price.

White based his Objection <u>exclusively</u> on the theory that the Bowers Litigation would "likely have a chilling effect on the proposed sale, and discourage parties who would otherwise submit competing offers." TA 003. Accordingly, White requested a 30 to 60 day extension of the proposed sale date to allow potential bidders to "digest" the Court's decision on the Bowers Objection. TA 003-004. The Court, however, found not a shred of evidence that any potential bidders were "chilled" by Bowers's pending Objection. TA 490-491. Consequently, the Court properly overruled White's Objection and approved the Sale Order. TA 491.

White asserted that Debtor's assets were marketed "under the shadow of Mr. Bowers's objection and his claims [were] just frightening off too many potential buyers." TA 483. The Court flatly rejected this assertion:

> I have no evidence that that's true. ... I have no evidence that's been submitted to me that a single bidder was chilled by the Bowers litigation. Mr. White didn't take the stand. There is no bidder, no potential investor who's taken the stand. ... I have to proceed based on the testimony that's been provided to me, by the evidence. I have no evidence whatsoever that a single bidder was chilled by the Bowers litigation.
>
> \* \* \*
>
> [T]here's no evidence that regardless of what length of time and what efforts were made to sell the assets that Mr. Bowers would have settled at any time earlier than he eventually settled which was during the sale hearing.

TA 484-485. White also claimed that the timing of the sale did not provide bidders with adequate time to evaluate Debtor's assets. TA 490. The Court summarily dismissed this argument as well:

> [N]otwithstanding the fact that Mr. White complains that the sale was conducted in a manner, that marketing efforts were conducted in a manner that were too short, there is absolutely no evidence

> from Mr. White as to what those marketing efforts ought to have
> been. Was it another day? Was it another week? Was it another
> three weeks?

TA 491.

The Bowers Litigation had nothing to do with the sale's end result because the sale was contingent upon a finding that Mr. Bowers's Objection would be disposed of. TA 490. Indeed, the Court noted that "it's difficult to believe that a potential buyer would have been concerned about the Bowers objection since it would not have been forced to close unless it was resolved." TA 490. Judge Boroff concluded that White's Objection suffered from "a complete failure of evidence and proof." TA 491. Accordingly, the Court overruled the White Objection. Id.

### C. The Remainder of White's Objections are Raised for the First Time on Appeal and Should Therefore be Rejected.

"It is well established that appellate courts will not consider an issue which was not before the trial court and which is first raised on appeal." In re Weinstein, 217 B.R. 5, 8 (D. Mass. 1998) (citing Singleton v. Wulff, 428 U.S. 106, 120 (1976)); see also In re Rauh, 119 F.3d 46, 51 (1st Cir. 1997) (refusing to consider a new theory of the case first raised on appeal since it had not been presented to the bankruptcy court). White based his Objection on the contention that Debtor's asset sale should have been continued pending the resolution of the Bowers Objection. TA 003-004. The Court flatly overruled White's Objection. TA 491. In addition to this previously rejected theory, White now claims that the Bankruptcy Court also abused its discretion in not conducting the sale in an "orderly" manner and approving the sale to an "insider of the Debtor." These newly concocted theories, raised for the first time on appeal, should be rejected.

White is nothing more than a frustrated bidder, and his cries of foul deserve no consideration from this Court. Even if the Court considered White's ill-timed objections, the

result is the same. The Bankruptcy Court found no evidence that the Debtor conducted the sale in a less than efficient manner. TA 491. Indeed, the Court found Debtor's marketing efforts to be more than sufficient. Id. Likewise, despite White's allegations to the contrary, IMSI did not withdraw its bid based upon an alleged fear of the Bowers Litigation. Rather, as IMSI's principal Martin Wade explained, IMSI simply chose not to increase its $2.5M bid because of "an overall concern that during a month when [Debtor] release[s] an upgrade, that sales should have been much more robust and they were not." TA 380.

White's accusations that Debtor acted in bad faith should also be dismissed. There was nothing inappropriate in Kubotek employing Robert Bean after the sale. Nor was it inappropriate that Kubotek owned stock in Debtor and purchased the assets. Both of these facts were fully disclosed to the Bankruptcy Court and to creditors.[4] AA 18. Moreover, the Court found that, despite Mr. Kakishita's transgressions on the witness stand, there was no evidence that Kubotek conducted itself improperly before the sale. TA 460. The Court recognized that notwithstanding Mr. Kakishita's testimony, Debtor's sale to Kubotek was in the best interests of the creditors. Id. The Court could have chosen to disqualify Kubotek from the sale altogether, but did not feel the evidence warranted such drastic action. Id. As such, all of White's objections are meritless and the Court should affirm Judge Boroff's Sale Order.

---

[4] White's contention regarding Mr. Bean appears to be that he benefited disproportionately from the sale. Aside from his failure to have raised this issue below and its questionable relevance to the analysis, White's contention is factually incorrect. Mr. Bean, as Debtor's principal stockholder, lost his entire equity interest in the company. Moreover, he and his former wife are excluded from the scope of the release from Bowers, and are still involved in litigation in this Court. AA 18.

## Conclusion

For the reasons set forth above, Appellee respectfully requests that the Bankruptcy Court's November 6, 2003 Sale Order be affirmed in its entirety.

Respectfully submitted,

JOHN A. BURDICK, JR., TRUSTEE

By his proposed attorneys,

Michael J. Goldberg (BBO# 551869)
John C. La Liberte (BBO# 556046)
Anthony L. DeProspo, Jr. (BBO# 644668)
SHERIN AND LODGEN LLP
100 Summer Street
Boston, MA 02110
T: (617) 646-2000
F: (617) 646-2222

Dated: March 31, 2004

## CERTIFICATE OF SERVICE

I, John C. La Liberte, hereby certify that on this day, I served by first class mail one copy of the foregoing document to:

Robert White
P.O. Box 488
Boise City, OK 73933

I served by first class mail one copy of the foregoing document (without appendix) to:

James M. Wilton, Esq.
Ropes & Gray
One International Place
Boston, MA 02110-2624

David Livingston Davies, Esq.
P.O. Box 367
Duxbury, MA 02331

_____
John C. La Liberte, Esq.

March 31, 2004