UNITED STATES DISTRICT COURTS OFFICE
FOR THE
DISTRICT OF MASSACHUSETTS

03-40279-NMG

---

WHITE - Pro Se

Appellant

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Appellee

---

On Appeal form the United States Bankruptcy Court
Western District of Massachusetts

---

APPELLANT'S RESPONSE TO APPELLEE'S REPLY BRIEF

---

### The Bankruptcy Court Violated the Bidding Procedures

The Bidding Procedures is this case required the Bankruptcy Court to hear and resolve all objections to the sale at the start of the Sale Hearing, before the auction was held "in order to facilitate competitive bidding...". The Bidding Procedure Order recognizes: [1]

> F.   There is a need to determine respective interests in the Purchased Assets in order to facilitate competitive bidding for the Purchased Assets.

---

[1]  B.C. docket # 55, pg. 4 : pp. F  (Sale Procedures Order)

1

The Bidding Procedures required a hearing to resolve all objections to the sale at the start of the Sale Hearing: [2]

> 3. A hearing to consider approval of the sale to IMSI pursuant to the IMSI Purchase Agreement and any objections and Counteroffers will be held at ____ ____.m. on ____ ____, 2003, in Courtroom ___, 211 Harold D. Donohue Federal Building & Courthouse, 595 Main Street, Worcester, MA 01608-2076 (the "Sale Hearing"). In the event that Counteroffers meeting the above requirements are received, an auction sale of the Purchased Assets will be held in accordance with bidding terms to be announced at the time of the Sale Hearing.

The Bankruptcy Court scheduled the Sale hearing for October 20, 2003: [3]

> 10. An auction (the "Auction") for the Debtor's assets will be conducted by the Court at a Sale Hearing in 211 Harold B. Donohue Federal Building Courthouse, 595 Main Street, Worcester, MA 01608-2076 at 9:30 a.m. on October 20, 2003 (the "Sale Hearing"). Only

Appellant and Bowers filed their objections to the sale, and the parties argued their positions during the entire first day of the Sale Hearing [4]; however, the Bankruptcy Court declined to rule on Bowers Objection prior to the auction, thus spoiling the sale and violating the Bidding Procedures. Appellee's Reply Brief reviews these circumstances on page 4:

> ... On September 8, 2003, the day before the scheduled Bankruptcy Court hearing on the Auction Procedures, IMSI terminated the Purchase Agreement. TA125.
> In response to IMSI, and in light of Bowers's anticipated objections to the sale, Debtor amended the Sale Motion. TA 126. The amended Sale Motion continued to seek a Court order that Debtor's assets would be sold free and clear of all liens, claims, and encumbrances (with a few exceptions). Id. The amended Sale Motion also sought a Court order which would allow Debtor to sell its assets free and clear of any alleged interests Bowers had in Debtor's intellectual property. Id. In sum, Debtor sought a ruling from the Bankruptcy Court that Debtor's sale would not violate the Injunction. Id.

Only a ruling on the Bowers Objection reached prior to the auction could motivate the buyers to enter competitive bids, else the bidders would not know the status of the assets they were bidding on. It does absolutely no good to hold the hearing on the objections to the sale and not rule on

---

[2] B.C. docket # 55, Exhibit A. (Sale Procedures)
[3] B.C. docket # 55, Exhibit A. (Sale Procedures)
[4] B.C. docket #166, transcript first day of Sale Hearing.

2

those objections prior to the auction. In this particular bankruptcy case the outcome of the Court's ruling on the objections would have established the value of the assets due to the clouded title cast by the Bowers Objection. If the Bankruptcy Court overruled the Bowers Objection, the assets would be worth more. If the Bankruptcy Court upheld the Bowers Objection, there would be no sale.

The Sale Order should be set aside because it violated key elements of the Bidding Procedures designed to encourage a fair, competitive, and open auction. The Sale Order should be set aside because the Bankruptcy Court abused its discretion by not following the Bidding Procedures by not ruling on the Bowers Objection prior to the auction.

## The Record is Replete With Proof the Stalking Horse Was Chilled by the Bowers Litigation

Appellant is at a loss how the Bankruptcy can deny that the stalking horse was chilled by the Bowers Objection. The record is replete with proof that the stalking horse was chilled by the Bowers litigation. The stalking horse explicitly stated in a letter to the Debtor, which was introduced to the Bankruptcy Court [5], that the stalking horse withdrew its offer early on because of the Bowers litigation. The Debtor's attorney also told the Bankruptcy Court that the stalking horse was chilled by the Bowers litigation [6], even though the stalking horse renegotiated additional terms of its purchase agreement in attempt to mitigate the Bowers Objection. By the time of the auction, none of the Bowers Objection had been resolved and the clouded title spoiled the sale. At the failed auction, the stalking horse actually cited "future litigation with the some of the creditors" as reason for withdrawing from the auction [7].

---

[5] T.A. pg. 120 (B.C. docket #106, Debtor's Verified Pre-Hearing Memorandum ...)
[6] A.A. pg. 46 : ln. 8 - pg. 49 : ln. 3 (B.C. docket #110, pg. 8 : ln. 8 - pg. 11 : ln. 3).
[7] T.A. pg. 380 : ln. 12 (B.C. docket #245 - transcript second day of Sale Hearing).

3

Additionally, there can be no other possible explanation why the stalking horse declined to accept the Debtor's assets after winning the bidding by default when the higher bidder failed to qualify as a good faith buyer, other than the fact the stalking horse was chilled by the Bankruptcy Court's failure to resolve the Bowers Objection. Indeed, after winning the bidding by default, the stalking horse was contractually obligated to take the assets and complete the sale except for the fact the Debtor could not deliver clear title to the assets at the time of the auction, as required by the Bidding Procedures.

### Once the Sale Was Over, It Was Over

Once the winning bidder committed perjury[8] and failed to qualify as a good faith buyer[9] and announced it declined to proceed with closing the sale[10], and the stalking horse declined to accept the assets by default[11], and declined to go forward[12], THE SALE WAS OVER. All the terms of the Bidding Procedure designed to encourage a competitive auction and chose a winner were exhausted once both parties declined to complete the sale. At this point in the failed auction, the Bankruptcy Court should have dispatched the parties to pursue some other means to settle the estate other than the auction, like trying a conventional reorganization plan.

Any subsequent attempt by the parties to salvage the failed sale violated the Bidding Procedure and denied Appellant and Bowers of their due process rights. Once the parties started violating the Sale Procedure Appellant had no venue, except this appeal, to address these transgression. After the stalking horse withdrew from the auction and went home, the bad faith buyer continued to negotiate a settlement with Bowers attorney over the next two weeks. These

---

[8] T.A. pg. 400 : ln.  1 - 11
[9] T.A. pg. 400 : ln. 12 - 13
[10] T.A. pg. 402 : ln.  2 - 8
[11] T.A. pg. 419 : ln.  5 - 17
[12] T.A. pg. 419 : ln. 18 - 20

4

negotiations fell outside the Sale Procedures since they were unilateral and not extended to both buyers at the time of the sale.

Bowers attorney had enough leverage to extract a settlement from his client due to Bowers' attorney's contingency fee relationship with Bowers stemming from ten years of copyright litigation against the Debtor. Ultimately, Bowers' attorney did leverage a settlement from his client amid filed threats of civil contempt charges against Bowers [13]. Bowers appealed the Sale Order and settlement [14]; however the Bankruptcy Court refused to grant Bowers Pro Se motion to extend the deadline for Bowers to perfect his appeal [15]. The coercive and often extortive settlement methods used by the Debtor's counsel, Creditors Committee counsel, Buyer's counsel, and Bowers' counsel were collectively shameful. Each of these attorneys as a group threatened Appellant with burdensome litigation in reprisal for Appellant not capitulating to the settlement demands of the estate.

### The Debtor is NOT the Victum

Appellee characterizes Appellant as a "frustrated bidder, and ... deserves no consideration from this Court".[16] Appellee also characterizes the principals of the Debtor, Bob and Karen Bean, as the victims in this bankruptcy because the Beans lost all their equity in their company. [17] Appellant does not have to remind this Court that the Debtor was found guilty of stealing Harold Bowers' software. The Debtor continued to profit from this theft for ten years while Bowers was denied a livelihood from his intellectual creation. Then the Debtor used bankruptcy to avoid paying the Bowers judgment and transferred ownership of the Debtor's

---

[13] A.A. pg. 108, B.C. docket # 151.
[14] A.A. pg. 108, B.C. docket # 154.
[15] A.A. pg. 111, B.C. docket # 173
[16] Appellee's Brief, pg. 13 : ln. 24 - 25

assets (and Bowers' and White's assets) to an insider while Bob Bean retained his lucrative employment with the new owner. All the while Bowers remains in near poverty from his experiences.

Appellant himself has also suffered disproportionately from this bankruptcy. Appellant's sole source of income was royalty payments from the Debtor for the purchase of Appellant's software which has long been incorporated into the Debtor's product. This bankruptcy has allowed the buyer to keep Appellant's technology without fulfilling the remaining two years of Appellant's contract with the Debtor. Bob and Karen Bean are hardly the victims in this bankruptcy.

## Conclusion

The expedited sale of the Debtor's assets violated the Bidding Procedures by not resolving the Bowers Objection prior to the auction. This failure had the predictable effect of chilling the bidding due to the cloud cast over the assets. It was bad enough to conduct the marketing of the assets under the cloud, but to conduct the auction under the cloud proved fatal.

The expedited sale was not in the best interest of the estate or creditors and produced a disastrous result in that assets worth from $8M-$10M only brought $2.85M, without paying any of the $6.5M in unsecured debt.

The expedited sale did not meet the "good business judgment" standard required to sell the estate's assets in lieu of a more conventional reorganization plan. Both secured and unsecured creditors would have faired much better under a conventional reorganization plan which suspended debts while the Debtor recovered. Given a conventional reorganization plan, the new release of the Debtor's software would have easily "bootstrapped" the Debtor back into profitability.

---

[17] Appellee's Brief, pg. 14 : fn. 4

The Debtor misrepresented its dire financial condition in order to justify an expedited sale of its assets. Its assets were not declining in value. Indeed, the Debtor's revenue increased above expectation during bankruptcy due to the release of its new software. The Debtor's sole motive for filing for Chapter 11 protection was to deprive Harold Bowers from collecting his judgment from the Debtor.

This case is plagued with misrepresentations and perjury. The investment banker failed to bring any buyers to the auction. The stalking horse withdrew from the sale twice, once at the onset and once at the auction itself. The winning bidder committed perjury. The Bankruptcy Court violated the Bidding Procedures. The attorney's used extortive tactics attempting to extract a settlement from Bowers and Appellant. And the principal of the Debtor continues to benefit from his illicit actions.

This case does not meet any of the standards by which a Debtor should be allowed to use bankruptcy to discharge its obligation to its creditors. The Sale Order should be set aside.

Respectfully submitted, on this 5th day of April, 2004,

by

*Robert White*

Robert White - Pro se Appellant

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

03-40279-NMG

---

WHITE - Pro Se

Appellant

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Appellee

---

On Appeal form the United States Bankruptcy Court
Western District of Massachusetts

---

CERTIFICATE OF SERVICE
for
APPELLANT'S RESPONSE TO APPELLEE'S REPLY BRIEF

---

I, Robert White, hereby certify that on this 7th day of April, 2004, I served a copy of APPELLANT'S RESPONSE TO APPELLEE'S REPLY BRIEF by mailing the same, postage prepaid to the following:

### SERVICE LIST

| | |
|---|---|
| The Official Committee of Unsecured Creditors | Michael J. Goldberg, Esq.<br>Sherin and Lodgen LLP<br>100 Summer Street<br>Boston, MA 02110 |

1

| | |
|---|---|
| CADKEY Corporation | James Wilton, Esq.<br>Ropes and Gray, LLP<br>One International Place<br>Boston, MA 02110 |
| Kubotek Corporation | John Loughnane, Esq.<br>Gadsby Hanna LLP<br>225 Franklin Street<br>Boston, MA 02110 |
| Harold L. Bowers | Frederic Meeker, Esq.<br>Banner & Witcoff, Ltd.<br>1001 G Street, NW<br>11th Floor<br>Washington, DC 20001-4597 |
| MCS | Livingston Davies, Esq.<br>Law Office of Livingston Davies<br>P.O. Box 367<br>Duxbury, MA 02331 |
| John A. Burdick Jr. - Chapter 7 Trustee | John A. Burdick Jr.<br>340 Main Street, Suite 800<br>Worcester, MA 01608 |

April 5, 2004

Robert White - Pro Se

*[signature: Robert White]*

Box 488, Boise City, OK 73933
Voice: (580) 544-4210

2