United States District Court
District of Massachusetts

```
_____
                              )
IN RE CADKEY CORPORATION,     )
                              )
        Debtor,               )
                              )
ROBERT WHITE,                 )
                              )
        Appellant,            )
                              )
        v.                    )   Bankruptcy Appeal No.
                              )   03-40279-NMG
OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS,                    )
                              )
        Appellee.             )
_____)
```

MEMORANDUM & ORDER

**GORTON, J.**

This bankruptcy appeal relates to the Chapter 11 bankruptcy of Cadkey Corporation ("Cadkey" or "the Debtor"). The Bankruptcy Court, pursuant to 11 U.S.C. § 363(b), approved an auction and sale of substantially all of the Debtor's assets. Robert White ("White"), an unsecured creditor of the Debtor, filed objections to the sale with the Bankruptcy Court. Those objections were overruled and White now appeals.

I. **Background**

The following facts are taken from the Appellant's Brief (Docket No. 6), the Appendix thereto (Docket No. 7), Appellee's

-1-

Brief (Docket No. 19) and Appellant's Reply (Docket No. 20).

Cadkey is a software company based in Marlborough, Massachusetts and Robert White is an unsecured creditor of the Debtor.  On June 7, 2000, the Debtor was found liable for patent and copyright infringement to Harold L. Bowers ("Bowers").  In addition to damages awarded by the jury, the Court issued an injunction prohibiting the Debtor from continuing to infringe upon Bowers' intellectual property rights ("the Bowers Injunction").

On August 22, 2003, with Bowers' judgment yet unsatisfied, the Debtor filed a voluntary petition for bankruptcy under Chapter 11.  That same day, Debtor signed an asset purchase agreement with International Microcomputer Software, Inc. ("IMSI") for the sale of its assets for $2.5 million and filed a motion in the Bankruptcy Court seeking approval of the sale ("the Sale Motion").  Bowers subsequently advised the Debtor of his belief that the assets to be sold included his intellectual property and that he intended to seek legal redress against any purchaser of that property.  On September 8, 2003, IMSI terminated the purchase agreement.

In response, the Debtor amended its Sale Motion to seek an Order that the Debtor's assets would be sold "free and clear of all liens, claims and encumbrances".  On October 9, 2003, White filed an Objection to the Sale Motion, claiming that the

Injunction entered on behalf of Bowers inhibited the Debtor's ability to sell its assets and that a postponement of the sale was needed to resolve issues raised by the Injunction. Subsequently, however, Bowers and the Debtor reached an agreement which provided that qualified bidders would be permitted to condition their bids on the issuance of a Bankruptcy Court Order that any subsequent purchase would not violate Bowers' intellectual property rights.  Alternatively, the successful bidder would be afforded the opportunity to negotiate with Bowers for a release of all claims.

On October 27, 2003, the Debtor's assets were auctioned in accordance with a procedure approved by the Bankruptcy Court. The Debtor employed an investment banking firm to solicit potential buyers.  At the auction, IMSI made an initial bid of $2.5 million.  Kubotek Corporation ("Kubotek") made a higher bid at $2.85 million conditioned upon on a Court finding that the purchase did not violate Bowers' intellectual property rights. Kubotek subsequently negotiated an agreement with Bowers for the release of all claims but White, nevertheless, pressed his objection to the sale.

On November 6, 2003, the Bankruptcy Court held a hearing to address White's Objection.  White argued that the sale had been conducted "too quickly" and that the Debtor's assets had been insufficiently marketed because issues relating to the Bowers

Injunction had depressed potential bids at the auction. The Debtor countered by offering the testimony of its CEO, Robert Bean ("Bean") that 1) the timing of the sale was appropriate because Debtor's sales were declining, 2) its customers were withholding payments, 3) 10% of the company's employees had resigned and 4) a recently-released software upgrade had produced disappointing sales results. White argued, on the other hand, that the Debtor was poised to realize large profits from the release of its pending software package.

The Bankruptcy Court overruled White's Objection and found "absolutely no evidence to show that a single potential bidder was chilled in its interest in the company on account of the Bowers Injunction". Additionally, the Court found no evidence that the Debtor's marketing efforts had been insufficient or that additional marketing would have brought a higher sale price. On December 15, 2003, White filed this appeal.

White now contends that the Bankruptcy Court abused its discretion by 1) expediting the sale of the assets "in lieu of a more orderly sale", 2) electing not to postpone the sale pending resolution of issues raised by the Bowers Injunction and 3) approving the sale to a buyer who was an insider of the Debtor, and who the Bankruptcy Court found to have committed perjury and to have failed to qualify as a "good faith" buyer. White seeks to have the sale set aside.

Appellee responds that the first and third issues were not properly preserved for appeal because they were not raised before the Bankruptcy Court.  With respect to the second issue, Appellee argues, in essence, that the Bankruptcy Court based its decision on sound factual conclusions and therefore did not abuse its discretion.

## II. Legal Analysis

### A. Standard of Review

A Bankruptcy Court enjoys considerable discretion with respect to motions brought under 11 U.S.C. § 363(b).  <u>In re Montgomery Ward Holding Corp.</u>, 242 B.R. 147, 152-53 (D.Del. 1999).  Accordingly, a Bankruptcy Court's Order with respect to such a motion "may only be overturned on appeal if its decision was an abuse of discretion".  <u>Id.</u> at 153 (internal citations omitted).

### B. Issues not Preserved for Appeal

The law is well-settled that "appellate courts will not consider an issue which was not before the trial court and which is first raised on appeal." <u>In re Weinstein</u>, 217 B.R. 5, 8 (D.Mass. 1998)(declining to consider an argument on appeal to district court that was not raised in the bankruptcy court).  <u>See also</u> <u>In re Rauh</u>, 119 F.3d 46, 51 (1st Cir. 1997)("the bankruptcy

court was never afforded an opportunity to consider the theory and authorities now advanced . . . nor to make any predicate factual findings, we decline the invitation to do so on appeal").

White presents three arguments on this appeal but the Objection he filed on October 9, 2003 that was subsequently considered by the Bankruptcy Court related only to his second argument.  That argument was that the Bankruptcy Court should have postponed the sale of assets until it resolved the issues raised by the Bowers Injunction.  That argument is properly before this Court on appeal.

This Court is not, however, at liberty to consider White's other arguments (that the Bankruptcy Court 1) should have conducted a "more orderly sale" or 2) erred in approving a sale to an "insider of the Debtor") because those arguments were not made to the Bankruptcy Court.  This Court is, therefore, not authorized at this time to "consider the authorities now advanced [or] make any predicate factual findings".  See id.  Accordingly, those issues were not properly preserved for appeal and only White's second argument will be addressed.

**C.   The Bankruptcy Court's Decision not to Postpone the Sale in Light of the Bowers Injunction**

Pursuant to 11 U.S.C. § 363(b), "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  In

evaluating a trustee's decision to do so, the court must be mindful that:

> [A] debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice. In re Aerovex, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (internal quotations and citations omitted).

Furthermore, after a court approves or confirms a sale, that sale may be vacated only where:

> (a) there was fraud, unfairness or mistake in the conduct of the sale; or (b) the price brought at the sale was so grossly inadequate as to shock the conscience of the court and raise a presumption of fraud, unfairness or mistake. Hayes v. Sullivan, 1992 WL 486914 (D.Mass. 1992).

White argues that the decision to sell the assets was not the product of sound business judgment but rather, the "Debtor's attempt to avoid paying a judgment [to Bowers]". White offers two reasons why that is so and those reasons are addressed in the numbered paragraphs below.

1. White first contends that the Debtor was not experiencing any financial emergency that would justify the Bankruptcy Court's decision to allow the sale to proceed without first resolving the consequences of the Bowers Injunction upon the assets. He points out that the Debtor maintained its ability to pay its employees and secured creditors both before and during bankruptcy. In the absence of any compelling reason to sell, sound business judgment warranted a postponement.

Appellees respond by referring to the testimony of the

Debtor's CEO, Robert Bean.  Mr. Bean testified that the Debtor's sales were declining each month, that customers were withholding payments, that sales of a recent software upgrade had been disappointing and that employee attrition had already reduced the workforce.  He suggests that, not only was an immediate sale preferable, but that the company's value would have actually decreased during any postponement.  White has offered no credible evidence to contradict that testimony.  Thus, there is ample evidence that an immediate sale was preferable and that choice of action was well within the ambit of sound business judgment.

Moreover, White offers no credible evidence that the value of the assets to be sold would have increased during a postponement or following the resolution of any uncertainty raised by the Bowers Injunction.  Thus, even if there had been a postponement, it is unclear that the eventual sale price would have been any higher.  There was, therefore, no clear reason to delay the sale.  In sum, the Bankruptcy Court, having heard the facts and testimony, made a discretionary, and reasonable, decision with respect to the business interests of the Debtor and this Court will not disturb that decision.

2.  White also quarrels with the Bankruptcy Court's conclusion that potential purchasers were not dissuaded from participating in the auction by the possible effect of the Bowers Injunction on the value of the assets.  White vigorously asserts

that the specter of litigation with Bowers served to dissuade IMSI from bidding at the auction and prevented other (unidentified) potential purchasers from becoming interested.

As the Bankruptcy Court pointed out, however, the consummation of the sale was made expressly contingent upon a finding that the sale did not bear upon Bowers's intellectual property rights.  Potential purchasers knew that they would not be bound to close the purchase until protection against litigation by Bowers was assured.  Thus, it was reasonable to conclude, as did the Bankruptcy Court, that the level of interest of potential purchasers, and consequently the price bid for the assets, was not adversely affected by the Bowers Injunction.

Moreover, White has offered no evidence of any specific potential purchaser which was dissuaded from participating in the auction based on the Bowers Injunction.  As a result, there is no reason to suggest that the eventual purchase price was, in reality, depressed by the Bowers Injunction.  Perhaps reasonable minds could differ as to whether the better practice would have been for the Bankruptcy Court to resolve the issues relating to the Bowers Injunction before the sale but the Court did not abuse its discretion in finding it unnecessary to do so.

This Court is sympathetic to the inability of the unsecured creditors to collect a fair dividend but, given the careful consideration to the matter rendered by the Bankruptcy Court and

this Court's deferential level of review, White's Objection does not warrant vacation of the sale. Accordingly, the Bankruptcy Court's decision will be affirmed.

### ORDER

In accordance with the foregoing, this Court affirms the Bankruptcy Court's Order allowing Defendants' motion to sell pursuant to 11 U.S.C. § 363(b) and this appeal is hereby **DISMISSED**.

**So ordered.**

                                 /s/ Nathaniel M. Gorton  
                                 Nathaniel M. Gorton  
                                 United States District Judge  
Dated November 4, 2004